IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD SCOTT MAYEK,

                            Plaintiff,

v.                                            OPINION and ORDER

SHELLY HILL and JOSEPH BELZ,[1]          22-cv-22-jdp

                            Defendants.

---

Plaintiff Gerald Scott Mayek, appearing pro se, is currently incarcerated at Kettle Moraine Correctional Institution. Mayek alleges that when he was incarcerated at Wisconsin Secure Program Facility, correctional officers forced him to sit in a transport van longer than necessary despite knowing that he suffered severe pain from prolonged sitting. I granted Mayek leave to proceed on Eighth Amendment claims.

Defendants move for summary judgment. Dkt. 46. I will grant the motion. Named defendant Hill did not participate in transporting Mayek to the hospital. As for defendant Belz, Mayek fails to present evidence that Belz was aware that Mayek would suffer severe pain from prolonged sitting.

PRELIMINARY MATTERS

About a week before the dispositive motions deadline. Mayek filed documents titled "Notice of Amendment of Complaint as a Matter of Course," Dkt. 43, and "Request to Correct the Name of Defendant," Dkt. 44. Mayek seeks to replace defendant Shelly Hill with Mary

---

[1] I have amended the caption to reflect defendants' names as presented in their submissions.

Taylor; it is now undisputed that Hill was not part of the hospital transport at issue in this case, but that Taylor was. Defendants oppose this late attempt at amending the complaint, and I agree with them.

At this stage of the case, Mayek does not have the right to amend his complaint as a matter of course, and I conclude that it is too late for him to do so. Mayek states that "WSPF had refused to give the names of these defendants to the Plaintiff," Dkt. 43, at 1, but if he felt that he was being stonewalled on discovery he should have filed a formal motion to compel discovery well before the dispositive motions deadline. And in any event I conclude that an amendment would be futile because, for reasons stated below, it would not change the outcome of the case. So I will deny this motion.

Mayek asks to hold in camera proceedings or to have him take a polygraph test to help him refute defendants' proposed findings of fact, which he believes are false. Dkt. 54. I will deny this motion because this court doesn't consider the credibility of witnesses at summary judgment. It would be up to the jury to assess credibility at trial.

Mayek also asks to file a sur-reply with records from his June 8, 2021 medical appointment at the center of this case. Dkt. 58. Although this court disfavors sur-replies, I will grant Mayek's motion and I will consider his additional medical records.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

During the events relevant to this case, plaintiff Gerald Mayek was housed at Wisconsin Secure Program Facility (WSPF). Defendants Joseph Belz and Shelly Hill were correctional officers.

Mayek had a 10:45 a.m. medical appointment for a painful mouth condition at Gundersen Clinic in Onalaska, Wisconsin, about an hour and 45 minutes away. Defendant Belz and officer Mary Taylor transported Mayek to Gundersen Clinic. Defendant Hill was not part of the transport team.

Mayek's claims are about the officers taking longer than necessary to transport him back to the prison after this medical appointment despite knowing that he suffered pain from prolonged sitting. The parties dispute much of the following timeline. For purposes of summary judgment, I will accept Mayek's version of the facts where it is supported by admissible evidence.

Defendants state that the appointment started at 11:00 a.m. and took about an hour. Mayek states that the appointment started around 10:45 and lasted 15 minutes, with Mayek waiting another 5 to 10 minutes "waiting for the doctor's notes" before leaving. Dkt. 53, ¶ 6. Each side cites time stamps on medical records to support their proposed findings; in particular they disagree about whether an "11:00" stamp on progress notes from the appointment means when the appointment started, when it ended, or when the doctor entered the note. Dkt. 53-1, at 1. In his sur-reply, Mayek produces additional medical records showing that a medical assistant took his vitals at 10:47 a.m. and that the doctor entered a medication note at 11:07 a.m. Dkts. 58-2 and 58-3. Ultimately the records are not clear enough to tell for certain when the appointment started, or to conclusively contradict Mayek's statement that they were back in the van by 11:15 a.m. So I will assume for purposes of summary judgment that they got back into the van around 11:15 a.m.

Mayek and defendants sat in the transport van in the parking lot while Mayek ate the lunch that had been provided for him by prison staff. Defendants state that prison policy

3

requires inmates to eat in the transport van. Mayek states that on trips to other locations he was not forced to eat in the van, and he believes that defendants forced him to eat in the van so that they could use their cell phones. Defendants say that it took Mayek a half hour to eat his lunch; Mayek says that it only took him five minutes, in part because his mouth condition allowed him to eat only a sandwich and milk. But he agrees that they stayed parked for about a half hour.

Mayek suffered a spinal injury in 2019. Mayek states that "every employee at WSPF" knew about his injury. Belz states that did not know that Mayek suffered from pain for prolonged sitting. Mayek states that at some point while they were in the hospital, Belz got him a wheelchair "because of his back pain and problem walking." Dkt. 52, ¶ 10.

I take the parties to be saying that correctional officers are generally not allowed to have their personal cell phones with them when transporting inmates. In this instance, Belz was allowed to bring his personal cell phone because there was not a DOC-issued phone available. Defendants state that Belz received one call on his phone during the events in question—a work-related call from WSPF staff. Defendants also state that while Mayek was eating, Belz "may have been on [his] phone briefly looking at the weather or the news." Dkt. 49, ¶ 21. Mayek disputes that, stating that Belz was on his phone for the entire 30 minutes he states that they were in the parking lot.

Mayek states that once they were on the road, Belz stopped twice to get food, with the first fast food restaurant being so busy that he drove to a second restaurant, where they waited 20 minutes to get food. Defendants state that Belz did not stop to get food, which would have been a work-rule violation.

Defendants say that during the trip, Mayek did not say anything about being in pain or having a back injury. Mayek says in his unsworn responses to defendants' proposed findings of fact that he "was at all times in extreme pain," that he "informed Belz and Taylor that he was suffering pain from sitting for so long," and that they "disregarded [his] complaints about his pain (except giving him a wheelchair)." Dkt. 52, ¶¶ 10, 25.

The transport arrived back at WSPF at 2:11 p.m. According to Mayek's timeline, between time spent in the parking lot and time on the road, he spent about three hours sitting in the van. According to defendants' timeline, Mayek spent about two hours and 15 minutes sitting in the van.

Mayek states that when he returned to WSPF and was taken to the medical unit for a COVID check, he "had to hang on to the wall because of his extreme pain." Dkt. 53, ¶ 17.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Mayek contends that defendants Hill and Belz violated his rights under the Eighth Amendment to the United States Constitution by delaying their return to WSPF despite knowing that Mayek suffered severe back pain from sitting in the transport van.

The Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also Norfleet v. Webster*, 439 F.3d 392, 397

(7th Cir. 2006) (standard is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate").

I will dismiss defendant Hill from the case because the parties agree that she was not part of the team that transported Mayek to and from the hospital.

That leaves defendant Belz. In my order screening Mayek's complaint, I warned Mayek that it would be more difficult to prove his Eighth Amendment claims at summary judgment or trial than it was for him to state claims in his complaint:

> Mayek will have to provide evidence showing that he actually did suffer from a serious medical need. He only vaguely alleges that he suffered from a spinal injury that caused him pain; as the case progresses he will have to explain what he means by that, and what defendants knew about the alleged injury and the pain it caused him. And Mayek will have to show that defendants' alleged delay actually caused him harm. He already states that the round trip would have taken five hours even without the delay, which suggests that he was going to suffer discomfort from prolonged sitting no matter what. He will have to show that defendants' delay caused him harm beyond that which he already would have suffered from the ordinary length of the trip, that defendants were aware of this harm, and that it was unreasonable for them to take extra time to complete the trip.

Dkt. 7, at 3.

Even resolving all factual disputes in Mayek's favor and drawing reasonable inferences from his proposed findings, I conclude that Mayek has not met his burden to present evidence supporting his claims at summary judgment.

There is a disputed issue of fact over whether Belz dawdled in returning Mayek to prison. A reasonable jury could find that Belz and Taylor took about an extra 60 to 75 minutes for the trip by staying in the hospital parking lot using their cell phones and by driving to two fast food restaurants to find lunch for Belz.

But Mayek fails to provide any evidence that Belz consciously disregarded his back pain from prolonged sitting. Mayek explains that use of a personal cell phone for non-work matters or stopping a transport van to get lunch violates DOC work rules. However, a violation of prison policy by itself does not necessarily violate the Constitution, *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). The relevant question is whether Belz knew that prolonged sitting in the transport van caused Mayek severe pain and whether Belz disregarded that problem when he dawdled on his way back to the prison.

I conclude that Mayek's vague statements about his complaints of pain during the day's events are not enough to support a reasonable jury verdict that Belz disregarded his pain. Notably, Belz wasn't transporting Mayek to the hospital for back treatment; he was being seen for a painful mouth condition. Belz says that he did not know that Mayek suffered from pain from prolonged sitting.

Mayek states that "every employee at WSPF" knew about his injury and that at some point while they were in the hospital, Belz got him a wheelchair "because of his back pain and problem walking." That suggests that Belz was aware that Mayek had a painful back condition, but Mayek does not establish that Belz knew that the condition was exacerbated by sitting in the van.

Nowhere in his sworn declaration, Dkt. 53, does Mayek say that he explicitly told Belz that he was suffering increased pain from prolonged sitting in the van. Rather, he stated in his response to defendants' proposed findings of fact that he "was at all times in extreme pain," and that he "informed Belz and Taylor that he was suffering pain from sitting for so long." But those responses were not sworn under penalty of perjury and are thus inadmissible at summary judgment. *Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006). And even if he had included

7

those statements in his declaration, they are still vague as to *when* he told Belz and Taylor this and thus whether Belz disregarded Mayek's pain.

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Mayek's vague account of the events are not enough to create a genuine issue of material fact for trial. So I will grant defendants' motion for summary judgment and dismiss the case.[2]

ORDER

IT IS ORDERED that:

1. Plaintiff Gerald Scott Mayek's motion to amend his complaint, Dkt. 44, is DENIED.

2. Plaintiff's motion to hold in camera proceedings or for a polygraph test, Dkt. 54, is DENIED.

3. Plaintiff's motion for leave to file a sur-reply, Dkt. 58, is GRANTED.

4. Defendants' motion for summary judgment, Dkt. 46, is GRANTED.

5. The clerk of court is directed to enter judgment accordingly and close the case.

Entered December 12, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

---

[2] Defendants also contends that they are entitled to qualified immunity on Mayek's claims. Because I am dismissing Mayek's claims on the merits, I need not consider defendants' qualified immunity argument.